IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOSEPH BARATTA | ) Civil Action No. 05-60187 MARRA/ |
| | ) SELTZER |
| Plaintiff, | ) **REPLY IN SUPPORT OF** |
| | ) **DEFENDANT'S MOTION TO ENFORCE** |
| v. | ) **SETTLEMENT AGREEMENT** |
| HOMELAND HOUSEWARES, LLC, | ) |
| Defendant. | ) |

## I.
## THE COURT SHOULD ENFORCE THE PARTIES' SETTLEMENT AGREEMENT AS THERE IS NO EVIDENCE TO CONTROVERT THAT A SETTLEMENT WAS REACHED

All the evidence before this court – which is uncontroverted – requires a conclusion that there is a settlement. (*See*, Cislo Decl. ¶¶3-10.)[1] Baratta's attorney negotiated the settlement which Baratta agreed to and Baratta was even present when the terms of the settlement were negotiated and assented to those terms. (Martin Decl. ¶¶3-4.)[2] In rebuttal, Baratta presents no evidence, no testimony, and nothing more than unsubstantiated attorney arguments to the contrary. Baratta's attorney arguments are not supported by any declaration signed under penalty of perjury nor any deposition testimony, nor even a single document to the contrary. Consequently, this Court should order that a valid and enforceable settlement agreement presently exists between the parties.

---

[1] All references to the Cislo Declaration are to the December 6, 2006 declaration of Daniel M. Cislo filed in support of Homeland's moving papers.

[2] All references to the Martin Declaration are to the January 8, 2007, declaration of Rick Martin on file with the Court and attached hereto as Exhibit A.

## II.
## A COMPLETE SETTLEMENT AGREEMENT CONTAINING ALL MATERIAL TERMS WAS AGREED UPON

The parties' settlement agreement included all essential and material terms. Baratta's former counsel, Martin, concurs. (Martin Decl. ¶3.) The agreed upon terms were as follows:

(a) Homeland agreed to pay Baratta a total of $315,000 in three equal installments of $105,000 each. The payments were to be made to the Patent Law Offices of Rick Martin, P.C. The first installment was to be paid upon the signing of a written memorialization of the parties agreement by Baratta. The second and third installments were to be paid at 30 day intervals thereafter. (Cislo Decl. ¶7.)

(b) In exchange for the $315,000 in monetary consideration, Baratta agreed to provide Homeland with an exclusive, royalty-free, worldwide, and sole license, with the right to grant sublicenses under the '032 patent to make, use, have made, import, offer to sell, or sell juicer attachments as described and claimed in the '032 patent, for the life of the patent. Baratta agreed that he reserved no right to grant sub-licenses under the '032 patent to third parties. (Martin Decl. ¶¶11, 15.)

(c) Baratta and Homeland also agreed that Baratta could continue to make, use, have made, import, offer to sell and sell juicer attachments as described and claimed in the '032 patent. The parties agreed that any juicer attachments sold by Baratta would be clear in color, while any juicer attachments sold by Homeland would be gray in color.[3] (*See*, Cislo Decl. ¶7.)

Baratta's attorneys now claim that the settlement is missing material terms. More particularly, Baratta's attorneys now allege that the settlement lacks terms regarding ongoing royalties. (Response, p. 2.) However, the settlement was never for ongoing royalties, but always for a lump sum payment in exchange for a license. (Cislo Decl. ¶7; Martin Decl. ¶¶11, 13, and 15.) Baratta's attorneys claim that the parties' agreement was not complete because it lacked terms for ongoing royalties should be disregarded because Baratta's attorneys offer no evidence

---

[3] The parties also agreed to additional boilerplate as discussed in Homeland's moving papers. (*See also*, Martin Decl. ¶¶11-23.)

2

in support of this claim. Strikingly, Baratta's attorneys fail to offer even a conclusory declaration in support of the allegedly missing material term.

Baratta's attorneys also allege that the color of the juicers Baratta could make pursuant to the settlement is somehow an allegedly missing term. (Response, p. 2.) The parties' agreement, however, was quite clear. Baratta could make juicers that were clear in color and Homeland could make juicers that were grey in color. (Cislo Decl. ¶7; Martin Decl. ¶3.) When Baratta wanted to use a different color, Homeland agreed to a modification to allow Baratta to make juicers in colors other than clear so long as they were not grey in color. (Cislo Decl. ¶10; Martin Decl. ¶3.) Baratta's attorneys have failed to present any substantive evidence that the color of the juicers was somehow an omitted material term because it was clearly not omitted.

### III.
### BARATTA PARTICIPATED IN THE AGREED UPON SETTLEMENT AND NOW FAILS TO PROVIDE ANY TESTIMONY THAT THERE WAS NOT AN AGREEMENT

On August 11, 2006, Homeland's counsel, Baratta's counsel *and Baratta* discussed settlement by telephone and reached an agreement on the essential terms of the settlement. (Cislo Decl. ¶6; Martin Decl. ¶3.) Martin avers that Baratta was present at the August 11, 2006, telephone discussion (Martin Decl. ¶3) and Baratta's attorneys admit that he participated in the telephone discussion. (Response, p. 8, 1st paragraph.) However, Baratta's attorneys, without any evidence, now contend that Baratta rejected Homeland's settlement proposal. (*Id.*) Strikingly, Baratta's attorneys failed to support their claims with any declaration much less one signed under penalty of perjury.

Similarly, Baratta's attorneys make the entirely unsupported claim that: "At all times, [he] required that the terms of any agreement be presented in writing for his review." (Opposition, p. 9, 3rd paragraph.) Baratta's attorneys also make the unsupported claim that his "health issues require consultation with family and legal counsel for all significant financial decisions." (Id.) Baratta's attorneys further make the bald assertion that his son administers his financial affairs. (Id.) None of Baratta's attorneys' many claims are supported by a declaration, much less one signed under penalty of perjury by Baratta. Nor are there any declarations from Baratta's son or other family members whom supposedly administer Baratta's affairs. Baratta's

3

attorneys' unsupported claims do not establish lack of assent to the parties' settlement as there is no evidence to support these allegations. In contrast, Martin avers that Baratta assented to the settlement on multiple occasions. (Martin Decl. ¶¶3-4, 10.) Mere attorney accusation and argument can be entirely rejected as lacking any evidentiary basis whatsoever.

## IV.
## BARATTA'S ATTORNEY WITH BARATTA AT HIS SIDE HAD CLEAR AUTHORITY TO SETTLE THE CASE AND AGREE UPON TERMS OF SETTLEMENT

The parties engaged in settlement negotiations from about May of 2006 through August of 2006. (Cislo Decl. ¶¶3-10.) On August 11, 2006, the parties reached a settlement. (*Id.* at ¶6; Martin Decl. ¶3.) Baratta's counsel, Martin, confirmed with Homeland's counsel that the parties had reached a settlement. (Martin Decl. ¶¶5, 7, and 10.) Baratta was present during the telephone conference and did not disagree, (Martin Decl. ¶3.) Six days later on August 17, 2006, Baratta wanted to modify the settlement agreement and demanded more money. (Cislo Decl. at ¶7.) Homeland agreed to modify the settlement agreement instead of seeking enforcement of the settlement agreement and further litigation. (*Id.*) Subsequently, on August 23rd and August 30th, Martin confirmed that the parties had once again settled the matter with the additional financial payment. (Cislo Decl. at ¶8; Martin Decl. ¶11.) Now, however, there appear to be no limits to Baratta's greed apparently wanting more money.

Homeland properly believed that Martin had express authority to settle the case. Pursuant to Florida law, a principal is liable for the acts of its agent under both express and apparent authority. *Stiles v. Gordon Land Co.*, 44 So.2d 417, 421 (Fla. 1950). "By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing." *Id.*
Here, it is undisputed that on August 11, 2006, Martin and Cislo discussed and reached a settlement and that Baratta was present during the telephonic conference. (Cislo Decl. ¶6; Martin Decl. ¶3.) Baratta's attorneys do not dispute that this conference occurred. Rather, Baratta's attorneys now merely assert that Baratta rejected the settlement after the conference was over which is untrue and not supported by any evidence. (Response, p. 8, 1st paragraph.) However, during the telephone negotiations, Baratta allowed Martin to represent that the parties

4

had settled and made no statements to the contrary. (Martin Decl. ¶3.) Consequently, the settlement is binding upon Baratta.

## V.
## THE PARTIES' SETTLEMENT IS A CONTRACT THAT CAN BE COMPLETED IN *60 DAYS*, AND THUS IS NOT BARRED BY THE STATUE OF FRAUDS

Florida Statute Section 725.01, commonly known as the statute of frauds, states in relevant part that "any agreement that is not to be performed within the space of 1 year from the making thereof" is invalid if not in writing and signed by the party to be charged. *Florida Statute. §725.01.* Here the parties' oral settlement agreement is capable of being performed in 60 days.

Pursuant to the agreement, Homeland agreed to pay Baratta a total of $315,000 in three equal installments of $105,000 each. (Cislo Decl. ¶7; Martin Decl. ¶¶11, 13.) The first installment was to be paid upon the signing of a written memorialization of the parties' agreement by Baratta. (Cislo Decl. *¶7.)* The second and third installments were to be paid at 30 day intervals thereafter. *(Id.)* In exchange for the $315,000 in monetary consideration, Baratta agreed to provide Homeland with an exclusive, royalty-free license to make, use, have made, import, offer to sell, or sell juicer attachments as described and claimed in the '032 patent for the life of the patent. (Cislo Decl. ¶7; Martin Decl. ¶¶11, 12.) Homeland also agreed to allow Baratta the continued right to make, use, have made, import, offer to sell and sell juicer attachments as described and claimed in his '032 patent. (Cislo Decl. ¶7; Martin Decl. ¶¶3.)

As described above, the parties' settlement agreement required Baratta to simply grant Homeland a license. After the license was granted, Baratta had little or no further obligations. Homeland for its part, agreed to pay Baratta $315,000 in three equal installments. Per the parties' agreement, the entirety of Homeland's obligations would be completed in *no more than 60 days*.

In opposition, Baratta's attorneys argued that any agreement involving a license for a patent violates the statute of frauds if the remaining term of the patent is greater than one year. Baratta's attorneys could only find *Packet Company v. Sickles*, 72 U.S. 580, 595 (1867), in

5

support of their inaccurate legal proposition. The facts of Sickles are readily distinguishable from the instant case and are as follows:

> [T]he plaintiffs below, Sickles & Cook, and the Washington, &c., Steam Packet Company, the defendants, agreed that Sickles & Cook should attach, for use, to a steamboat owned by the company, the Sickles cut-off, a certain patented contrivance which was designed to effect the saving of fuel in the working of steam engines; and that, in consideration thereof, if the said cut-off should effect a saving in the consumption of fuel, the company would use it on their boat during the continuance of the said patent, IF the said boat should last so long, and that *they would, for the use of the cut-off, pay to the plaintiffs, weekly, three-fourths of the value of the fuel saved.* See, Packet Company, 72 U.S. at 580 (emphasis added.)

In other words, the defendant in *Packet Co.* had agreed to pay the plaintiff an *ongoing royalty* for use of the patented invention over the life of the patent. *Id.* Moreover, the parties had agreed that the defendant was obligated to use the patented invention, if it worked. *Id.* The Supreme Court found the agreement in *Packet Co.* to be void because it was a contract calling for the payment of *ongoing royalties* for the life of the patent. *Id.* at 584-595. Specifically, the Supreme Court found:

> [T]he substance of the contract is, that the defendants are to pay in money a certain proportion of the ascertained value of the fuel saved at stated intervals throughout the period of twelve years, if the boat to which the cut-off is attached should last so long. *Packet Co,.* 72 U.S. at 594 (finding oral contract void because it called for payments over 12 years).

The facts of the instant case are quite different from those of *Packet Co.* Here, Homeland has no obligation to pay any ongoing royalties to Baratta. Moreover, Homeland has no obligation to ever make, use or sell any juicers pursuant to Baratta's patent. Homeland's only obligation under the agreement is to pay Baratta $315,000 in three equal installments in no more than 60 days. Baratta likewise has no ongoing obligations to Homeland. Because the parties' settlement can be completed in no more than 60 days and has no substantive ongoing obligations, the agreement is not subject to the statute of frauds.

Baratta's attorneys also cited to *Sun Studs, Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557, 1563 (Fed. Cir. 1985), for the proposition that a license involving a patent violates

the statue of frauds. However, this case is of little help in deciding the instant case because *Sun Studs* primarily involved summary judgment rulings regarding cross motions to disqualify the parties' respective patent attorneys. *Id.* at 1558. In resolving the case, the Federal Circuit upheld in passing a finding of the trial court (District of Oregon) that a disputed settlement violated the Oregon statute of frauds because it included a patent license agreement where the defendant had ongoing obligations for the life of the patent. *Id.* at 1563. The Federal Circuit did not substantively elaborate on the nature of the ongoing obligations. In the instant case, neither Homeland nor Baratta, have any substantive ongoing obligations regarding the patent at issue.

As discussed above, the parties' oral settlement agreement does not fall within the statute of frauds. However, in the event the Court were to conclude otherwise, Homeland contends that the parties' written settlement agreement, i.e. Exhibit B to the Cislo Declaration is a writing that meets the requirements of the statute. The Parties agreed to all of the terms of this agreement. (Cislo Decl. ¶7; Martin Decl. ¶¶2-23.) Signing the agreement would merely be a ministerial act in view of Martin's clear and unequivocal authority to settle the case. *See, Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994).

## VI.
## CONTRARY TO BARATTA'S ATTORNEYS' ASSERTIONS 35 U.S.C. SECTION 261 HAS NO RELEVANCE TO THIS CASE

Baratta's attorneys claim that 35 U.S.C. section 261 of the Patent Act precludes a finding of settlement. 35 U.S.C. section 261 merely states that patents "shall be assignable in law by an instrument in writing." *35 U.S.C. §261*. An oral assignment is not invalid per se, it is simply not enforceable against a prior bona fide purchaser who had recorded his assignment with the patent office. Baratta's attorneys' argument that the parties' settlement is an oral assignment and is therefore invalid is incorrect because: (1) the settlement is a license agreement—not an assignment; and, (2) oral assignments are not invalid. Baratta's attorneys misstate the purpose of 35 U.S.C. section 261.

Along with the fallacious Section 261 argument, Baratta's attorneys also allege that because the parties' settlement agreement would only make Homeland a licensee of the patent-

7

in-suit (rather than the patent's owner), that somehow Homeland lacks standing to bring the instant motion to enforce the settlement agreement. In support of this incorrect legal proposition, Baratta's attorneys cited to *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). The *Enzo* case discussed whether the plaintiff in that action, a non-exclusive licensee of a patent, had standing to sue the defendant for patent infringement. The Federal Circuit found that a non-exclusive licensee lacked standing and reversed the trial court's decision to the contrary. *Id.* at 1093. The *Enzo* court stated in passing that in some limited circumstances, an exclusive licensee may have standing to bring an infringement suit. *Id. Enzo* has no applicability to the instant motion, because Homeland is seeking to enforce the parties' settlement agreement--not to sue Baratta for patent infringement. Moreover, it is well established that a district court has jurisdiction to enforce a settlement agreement and that Homeland as the named defendant has standing to bring such a motion. *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994).

## VII.

## CONCLUSION

For all of the above reasons, the Court should grant Homelands' motion to enforce the parties' settlement agreement because: (1) all the evidence in the record and testimony of Messrs. Cislo and Martin require a finding that the case was settled and the terms of the settlement are clear and not in dispute; (2) there is no evidence to the contrary and Mr. Baratta did not testify otherwise; (3) neither 35 U.S.C. §261 nor Florida's statute of frauds preclude an oral license agreement and settlement herein; and (4) Baratta was present when settlement was reached and Martin had clear authority to settle the case. The Court should enter dismissal of the case in view of the parties' settlement agreement attached as Exhibit B to the Cislo

Declaration submitted in support of Homeland's moving papers.

Respectfully submitted,

Dated: January 16th, 2007

By: _____/smgaffigan/_____
Stephen M. Gaffigan, P.A.
LAW OFFICES OF STEPHEN M. GAFFIGAN
312 S.E. 17th Street, Second Floor
Ft. Lauderdale, Florida 33316
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
Email: Stephen@smgpa.net

And
Daniel M. Cislo, Esq.
    Admitted Pro Hac Vice
David B. Sandelands, Esq.
    Admitted Pro Hac Vice
CISLO & THOMAS, LLP
233 Wilshire Boulevard, Suite 900
Santa Monica, California 90401
Telephone: (310) 451-0647
Facsimile: (310) 394-4477

Attorneys for Homeland Housewares, LLC

## CERTIFICATE OF SERVICE

I CERTIFY that on January 16, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record identified below, either via transmission of the Notice of electronic Filing generated by CM/ECF or in some other appropriate manner for those counsel or parties who are not authorized to receive electronically generated Notices of Electronic Filing:

David A. Gast
DGast@malloylaw.com
Malloy & Malloy, P.A.
2800 SW 3rd Avenue
Miami, Florida 33129
Counsel for Plaintiff

Rick Martin
RMartin@patentcolorado.com
Patent Law Office of Rick Martin
416 Coffman Street
Longmont, Colorado 30501
Counsel for Plaintiff

Luis S. Konski
Luis.Konski@ruden.com
Ruden, McClosky, et al.
701 Brickell Avenue, 19th Floor
Miami, Florida 33131
Counsel for Rick Martin

Daniel M. Cislo
DanCislo@cislo.com
Admitted *Pro Hac Vice*
David B. Sandelands
DSandelands@cislo.com
Admitted *Pro Hac Vice*
CISLO & THOMAS, LLP
233 Wilshire Boulevard, Suite 900
Santa Monica, California 90401
Counsel for Defendant

_____/smgaffigan/_____
Stephen M. Gaffigan